IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SOONER GERIATRICS, L.L.C. d/b/a      )
GRACE LIVING CENTER-                 )
WILDEWOOD, and TIMBERLANE            )
MANOR, L.L.C. d/b/a GRACE LIVING     )
CENTER-EDMOND,                       )
                                     )
                Plaintiffs,          )
                                     )
vs.                                  )        Case No. CIV-07-244-M
                                     )
JAMES MICHAEL CRUTCHER, acting       )
in his official capacity as the      )
COMMISSIONER OF THE OKLAHOMA         )
STATE DEPARTMENT OF HEALTH,          )
                                     )
                Defendant.           )

## ORDER

Before the Court is plaintiffs' Motion for Preliminary Injunction, filed May 23, 2007.  On

June 22, 2007, defendant filed his objection, and on July 9, 2007, plaintiffs filed their reply.  On

September 26, 2007, the Court conducted a hearing on plaintiffs' motion.

I.      Factual Background

Plaintiffs Sooner Geriatrics, L.L.C. d/b/a Grace Living Center-Wildewood ("Wildewood")

and Timberlane Manor, L.L.C. d/b/a Grace Living Center-Edmond ("Edmond") are fully licensed

long-term care providers in Edmond and Oklahoma City, Oklahoma.  Defendant James Michael

Crutcher, acting in his official capacity as the Commissioner of the Oklahoma State Department of

Health ("Commissioner"), is responsible for implementing and enforcing the Oklahoma Nursing

Home Care Act, Okla. Stat. tit. 63, §§ 1-901, *et seq.*, and regulating long-term care facilities in

Oklahoma, including plaintiffs.

The admission agreements utilized by plaintiffs routinely contain an arbitration provision

covering all disputes relating to a resident's care at Wildewood and Edmond.  During the Oklahoma State Department of Health's ("OSDH") most recent survey of Edmond on April 17, 2006, OSDH issued a state licensure deficiency to Edmond based upon the inclusion of an arbitration provision in its admission agreements, which OSDH claims to be in contravention of the Oklahoma Nursing Home Care Act.  OSDH also cited Wildewood with a similar deficiency on January 10, 2007.  When the deficiencies had not been corrected, OSDH imposed Directed Plans of Correction against Edmond and Wildewood.  In sum, OSDH's Directed Plans of Correction require Edmond and Wildewood to (i) revise their admission agreements to remove the arbitration provision; (ii) notify all residents and their representatives that the facility's standard agreement is being revised and provide them copies of the revised agreement along with a request to sign the new agreement; (iii) revise its admission and retention policies to delete any language requiring submission of disputes to arbitration; and (iv) to negotiate new admission agreements for all residents.

Plaintiffs now move the Court to enter a preliminary injunction enjoining the Commissioner from enforcing or attempting to enforce the Directed Plans of Correction against plaintiffs pending resolution of the merits of the claims asserted in this action.

II.    Discussion

A.    *Rooker-Feldman* doctrine

In his response, defendant asserts that under the *Rooker-Feldman*[1] doctrine, this Court lacks subject matter jurisdiction to hear and decide plaintiffs' claims.  Specifically, defendant asserts that plaintiffs' claims in the instant action are inextricably intertwined with the Oklahoma Supreme

---

[1]*Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983).

2

Court's judgment in *Bruner v. Timberlane Manor Ltd. P'ship*, 155 P.3d 16 (Okla. 2006).

"*Rooker-Feldman* precludes federal district courts from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims 'inextricably intertwined' with a prior state-court judgment." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (internal quotations and citations omitted).

> The *Rooker-Feldman* doctrine prohibits a party losing in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights. To determine whether a federal plaintiff's claim is inextricably intertwined with a state court judgment we must pay close attention to the relief the plaintiff seeks. . . . Where a plaintiff seeks a remedy that would "disrupt or undo" a state court judgment, the federal claim is inextricably intertwined with the state court judgment.

*Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147-48 (10th Cir. 2004) (internal quotations and citations omitted). Further, the *Rooker-Feldman* doctrine does not apply to a plaintiff who was not a party to the state court judgment, was not bound by the state court judgment, and was neither a predecessor nor successor in interest to a party to the state court judgment. *Mo's Express*, 441 F.3d at 1235-36. Additionally,

> even against the parties to a state-court judgment, *Rooker-Feldman* only applies when the injury alleged by the plaintiffs was caused by the state-court judgment. . . . [a court] approach[es] the question by asking whether the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*, paying close attention to the *relief* sought in the federal suit. . . .
>
> In contrast, when the relief sought by the plaintiffs would not reverse or "undo" the state-court judgment, *Rooker-Feldman* does not apply. . . . the *Rooker-Feldman* doctrine does not apply simply because a party attempts to litigate in federal court a matter previously litigated in state court. To the contrary, a party may lose in state court and then raise precisely the same legal issues in federal court, so long as the *relief sought* in the federal action would not

3

> reverse or undo the *relief granted* by the state court: If a federal
> plaintiff presents some independent claim, albeit one that denies a
> legal conclusion that a state court has reached in a case to which he
> was a party . . ., then there is jurisdiction.

*Id.* at 1237 (internal quotations and citations omitted).

Having carefully reviewed the parties' submissions, the Court finds that the *Rooker-Feldman* doctrine is not applicable to the case at bar. Specifically, the Court finds that the claims asserted in the instant action are not inextricably intertwined with *Bruner*. The injury alleged by plaintiffs in this action was not caused by the Oklahoma Supreme Court's judgment in *Bruner* but was caused by the regulatory actions taken by defendant to enforce the Oklahoma Nursing Home Care Act. Further, the Court finds that the relief sought by plaintiffs in this action would not reverse or "undo" the Oklahoma Supreme Court's judgment in *Bruner*. Finally, the Court would note that Wildewood was not a party to *Bruner*, was not bound by the judgment in *Bruner*, and was neither a predecessor nor successor in interest to a party to *Bruner*.

Accordingly, the Court finds that it has subject matter jurisdiction to hear and decide plaintiffs' claims.

> B.     Preliminary injunction standard

A movant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (internal citation omitted). Whether to grant a preliminary injunction rests within the sound discretion of the

trial court.  *United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).

Additionally, the Tenth Circuit employs a "modified requirement as to the likelihood of success" if "the movant has established the other three requirements for a preliminary injunction." *Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194-95 (10th Cir. 1999).  Under the modified standard, a movant may satisfy the likelihood of success requirement "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation . . . ."  *Id.*

Finally, the Tenth Circuit has recognized certain types of preliminary injunctions as specifically disfavored and warranting closer scrutiny.  Specifically, the Tenth Circuit has identified the following three types of disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005).  Regarding such disfavored preliminary injunctions, the Tenth Circuit has held:

> any preliminary injunction fitting within one of the disfavored categories *must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.*  Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard.  Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard.

*Id.* at 1261 (emphasis in original).

Defendant asserts that plaintiffs are seeking a disfavored preliminary injunction.

5

Specifically, defendant contends the preliminary injunction that plaintiffs are seeking alters the status quo and/or affords plaintiffs all the relief that they could recover at the conclusion of a full trial on the merits.

The status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Id.* at 1260 (internal quotations omitted). To determine the status quo for purposes of a preliminary injunction, a court should look to "the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Id.* (internal quotations omitted).

Having carefully reviewed the parties' submissions, the Court finds that the last uncontested status between plaintiffs and defendant occurred just prior to the OSDH's issuance of licensure deficiencies to plaintiffs for including arbitration provisions in their admission agreements. While the Oklahoma Nursing Home Care Act became effective in 1980, plaintiffs have had arbitration provisions in their admission agreements since 2003. Defendant, however, did not issue any licensure deficiencies to plaintiffs based upon these provisions until 2006. Accordingly, the Court finds that plaintiffs are seeking to preserve, not alter, the status quo through their request for a preliminary injunction.

> [T]he terms "all the relief to which the movant would be entitled" or "all the relief sought" have ... been the source of confusion because, read literally, they appear to describe any injunction where the final relief for the plaintiff would simply be a continuation of the preliminary relief.

*Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247 (10th Cir. 2001) (internal quotations omitted). The Tenth Circuit, therefore, has found that "'all the relief to which a plaintiff may be entitled' must be supplemented by a further requirement that the effect of the order, once

complied with, cannot be undone." *Id.* (internal quotations omitted).

In the case at bar, the relief ultimately sought by plaintiffs is a declaratory judgment regarding their use and enforcement of arbitration provisions in their admission agreements and a permanent injunction enjoining defendant from enforcing or attempting to enforce provisions of the Oklahoma Nursing Home Care Act against plaintiffs. The Court finds that granting a preliminary injunction in this case would only enjoin enforcement of the Directed Plans of Correction on a temporary basis and would not provide plaintiffs with complete relief nor would the effect of the preliminary injunction be incapable of being undone. In other words, if plaintiffs were not ultimately successful on the merits in this case, then defendant would be entitled to take appropriate enforcement action against plaintiffs as detailed in the Directed Plans of Correction. The Court, therefore, finds that the preliminary injunction that plaintiffs are seeking does not afford plaintiffs all the relief that they could recover at the conclusion of a full trial on the merits.

Accordingly, for the reasons set forth above, the Court finds that plaintiffs are not seeking a disfavored preliminary injunction.

C.    Analysis

1.    Irreparable injury

Having carefully reviewed the parties' submissions and having heard the arguments of counsel, the Court finds that plaintiffs have satisfied the requirement that they demonstrate they will suffer irreparable injury in the absence of injunctive relief. Specifically, the Court finds that to comply with the Directed Plans of Correction, plaintiffs will be required to engage in the wholesale modification of their contractual relationships with hundreds of their residents and that this modification will be made more difficult because many of these residents have authorized

representatives in other states and some residents, who do not have representatives, may not even have the legal capacity to sign new agreements.  Further, the Court finds that if it is ultimately determined by this Court that the arbitration provisions are proper, plaintiffs then must seek further, agreed revisions to the admission agreements, which may result in the loss of contractual rights to arbitrate by plaintiffs.  Additionally, if plaintiffs fail to sufficiently comply with the Directed Plans of Correction, they face losing their licenses to operate their facilities.  Finally, the Court finds that the above-referenced injury to plaintiffs is irreparable because final injunctive and declaratory relief prospectively applied would not repair the financial loss that plaintiffs would incur in making the above modifications and/or losing their licenses and because the Eleventh Amendment bars a legal remedy in money damages against defendant, an arm of the State of Oklahoma.

<u>2.</u>     <u>Balance of harms</u>

Having carefully reviewed the parties' submissions and having heard the arguments of counsel, the Court finds that plaintiffs have satisfied the requirement that they demonstrate the alleged injury to plaintiffs outweighs the injury to defendant.  As set forth above, plaintiffs will suffer irreparable injury if the preliminary injunction is not granted.  On the other hand, the Court finds that defendant will not suffer any harm if a preliminary injunction is granted; the preliminary injunction will cause only a mere delay in the potential implementation of the Directed Plans of Correction in the event this Court ultimately rules in favor of defendant.  Additionally, plaintiffs have included the arbitration provisions in their admission agreements since 2003, and defendant did not issue any licensure deficiencies to plaintiffs based upon these provisions until 2006.  The Court finds that since defendant has already on his own delayed enforcement of the Oklahoma Nursing Home Care Act, any small additional delay which would result while this Court determines

this case on its merits certainly would not cause any harm to defendant.

        3.      Public interest

        Having carefully reviewed the parties' submissions and having heard the arguments of counsel, the Court finds that plaintiffs have satisfied the requirement that they demonstrate the injunctive relief would not be adverse to the public interest.  Specifically, the Court finds that under the arbitration provisions in the admission agreements, the residents of plaintiffs' facilities may still bring a claim based upon improper care.  The Court further finds that even if the preliminary injunction were granted during the pendency of this action, the residents of plaintiffs' facilities would still be able to bring a lawsuit and based upon the *Bruner* decision, the Oklahoma state courts would in all likelihood not enforce the arbitration provisions.  Finally, the Court finds that the purpose of the Federal Arbitration Act was to establish a liberal federal policy favoring arbitration agreements and that in light of this purpose, the public interest clearly would not be harmed if a preliminary injunction were granted enjoining enforcement of the Directed Plans of Correction until this Court rules on the merits.

        4.      Likelihood of success

        Finally, having concluded that plaintiffs have satisfied all three of the preceding factors, the Court concludes the "modified" likelihood of success requirement should apply.  *See Fed. Lands*, 195 F.3d at 1194-95.  Having carefully reviewed the parties' submissions and having heard the arguments of counsel, the Court finds that "questions going to the merits are so serious, substantial, difficult, and doubtful as to make [the issues raised in this case] ripe for litigation . . . ."  *Id.* Specifically, the Court finds that based upon the case law and the factual background in this case, the issues of whether the Federal Arbitration Act applies to the arbitration provisions in plaintiffs'

admission agreements and if it does apply, how the application of the Federal Arbitration Act relates to defendant's regulatory enforcement power are so serious, substantial, difficult and doubtful as to make this case ripe for litigation.

Accordingly, the Court finds that plaintiffs have satisfied the four-factor test for a preliminary injunction.

III.    Conclusion

For the reasons set forth above, the Court GRANTS plaintiffs' Motion for Preliminary Injunction [docket no. 25]. Defendant is hereby ENJOINED from enforcing or attempting to enforce the Directed Plans of Correction against plaintiffs pending resolution of the merits of the claims asserted in this action. Additionally, in light of the absence of any identifiable harm to defendant as a result of issuing this preliminary injunction, the Court declines to require plaintiffs to post bond pursuant to Federal Rule of Civil Procedure 65(c). *See Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 782 (10th Cir. 1964) (finding that under Rule 65(c), "the trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary").

**IT IS SO ORDERED this 3rd day of October, 2007.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE